Benjamin Rudolph Delson
Alexander Granovsky
Granovsky & Sundaresh PLLC
48 Wall Street
New York, NY 10005
(646) 524-6001
delson@g-s-law.com
ag@g-s-law.com
*Attorneys for Plaintiff Shahid Parves*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Shahid Parves, | No. _____ |
| *Plaintiff,* | |
| v. | **COMPLAINT and** |
| | **JURY DEMAND** |
| Beyond Identity Inc., | |
| *Defendant.* | |

Plaintiff Shahid Parves, through his attorneys, Granovsky & Sundaresh PLLC, and as his complaint against Defendant Beyond Identity Inc., alleges as follows:

### NATURE OF ACTION

1. Plaintiff Shahid Parves is an IT worker living in Brooklyn. In October 2025, Defendant Beyond Identity Inc. offered Mr. Parves a job as an IT Manager at its office in Manhattan. The job represented both a meaningful pay increase for Mr. Parves and an important step forward in his career.

2. But on the day they made the job offer, Mr. Parves's soon-to-be bosses learned that Mr. Parves's father has Parkinson's disease and that Mr. Parves planned to

request occasional time off to care for his father. With that information, Beyond Identity rescinded the job offer, and Mr. Parves lost an opportunity to get ahead.

3.    Through this lawsuit, Mr. Parves seeks to be made whole. He asserts claims under the Americans With Disabilities Act, 42 U.S. Code § 12101 *et seq.* ("ADA"), New York State Human Rights Law, New York Exec. Law § 296 *et seq.* ("NYSHRL"), the New York State Paid Sick and Safe Leave law, NYLL §196-B, the New York City Human Rights Law, New York City Admin. Code § 8-101 *et seq.,* ("NYCHRL"), and the New York City Earned Safe and Sick Time Act, New York City Admin. Code § 20-911 *et seq.*

## JURISDICTION, VENUE AND TIMELINESS

4.    This Court has subject matter jurisdiction over Plaintiff's claims under the ADA pursuant to 28 U.S.C. §§ 1331.

5.    This Court has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

7.    Within 300 days of the events described below, on November 11, 2025, Mr. Parves through counsel timely filed a Charge of Discrimination with the EEOC. The EEOC issued Mr. Parves a Right to Sue Letter on January 20, 2026. Within 90 days, Ms. Adler, through counsel, timely filed this lawsuit.

2

**PARTIES**

8.    Plaintiff Shahid Parves is an adult resident of Brooklyn.

9.    Defendant Beyond Identity Inc. ("Beyond Identity") is a Delaware corporation with offices located at 61 W. 23rd Street in Manhattan.

10.    At all times in 2025, Beyond Identity had 15 or more employees.

**STATEMENT OF FACTS**

11.    Beyond Identity is an IT company focused on systems security.

12.    In the autumn of 2025, Mr. Parves applied for a position as IT Manager with Beyond Identity.

13.    Mr. Parves was qualified for the role of IT Manager with Beyond Identity at the time of his application.

14.    On October 20, 2025, at around 5pm, Mr. Parves had a telephone call with Ava Peters, Senior Manager for People & Talent at Beyond Identity.  In that phone call, Ms. Peters informed Mr. Parves that Beyond Identity intended to offer him the position as IT Manager.

15.    Mr. Parves's father has Parkinson's disease.

16.    Mr. Parves helps care for his father, including occasionally accompanying his father to medical appointments to seek care for his father.

17.    In his phone call with Ms. Peters on October 20, Mr. Parves informed Ms. Peters that his father had Parkinson's disease and that he received accommodations from his current employer in order to care for his father.  Mr. Parves asked whether Beyond Identity could accommodate him as well.  Ms. Peters responded with words

3

to the effect of, "Let me talk to the team and get back to you, but it seems like it should not be a problem."

18.    At about 5:24pm that same day, Beyond Identity extended a written offer of employment to Mr. Parves via DocuSign, offering him the role of IT Manager, with the role starting on November 24, 2025.  The role was to pay $140,000 per year, plus benefits, and would include a grant of stock options.

19.    Mr. Parves accepted the written offer of employment that same day at about 7:30pm.

20.    On October 21 at about 12:09pm, Ms. Peters emailed Mr. Parves stating, "we are very excited that you'll be joining us!"  In that email, Ms. Peters asked if Mr. Parves could start at Beyond Identity one or two weeks earlier than the original start date of November 24.  In that email, she also asked, "Could you please remind me of the accommodation request you mentioned so I can have it noted for the team?"

21.    On October 21 at about 12:34pm, Mr. Parves emailed Ms. Peters.  In that email he stated, "At my current job, I have been given reasonable accommodations, working additional days from when necessary that allow for me to take my father to any doctors appointments or physical therapy he may have. I am not the sole care taker but I am one of two people in my household that is available to drive him to these appointments."

22.    Upon information and belief, between 12:34pm and the 3:56pm on October 21, executives at Beyond Identity other than Ms. Peters (*i.e.* the "team" that Ms. Peters mentions in her email) learned for the first time that Mr. Parves had a parent with a

disability and/or that Mr. Parves would be seeking accommodations and/or seeking leave to care for a parent with a disability.

23.    On October 21 at about 3:56pm, Ms. Peters emailed Mr. Parves to withdraw the job offer, stating, "Shahid, Thank you again for your time throughout the interview process and for your interest in joining Beyond Identity. We completely understand and respect your family situation and the need for flexibility. That said, given the extended notice period and the need for more remote work than we had originally discussed, we've decided to withdraw the offer at this time. The role requires a consistent in-office presence on a weekly basis, and we understand that may not align with what you need right now. We truly appreciate the time you invested in getting to know the team and wish you all the best."

24.    Mr. Parves emailed Ms. Peters after the 3:56pm email, to communicate both his flexibility with respect to start dates and his flexibility with respect to the accommodations he was requesting.  Ms. Peters replied via email to say that Beyond Identity was firm in its decision to rescind the job offer.

25.    Beyond Identity withdrew Mr. Parves' job offer because his father had Parkinson's disease.

26.    Upon information and belief, Beyond Identity believed that because Mr. Parves's father had Parkinson's disease, Mr. Parves would be inattentive at work, would seek accommodations, and/or would need to make use of protected sick leave.

27.    Beyond Identity withdrew Mr. Parves' job offer because Mr. Parves had requested accommodations to help care for his father's Parkinson's disease.

28. Beyond Identity withdrew Mr. Parves' job offer because Mr. Parves intended to use protected leave to help care for his father's Parkinson's disease.

29. As a result of Beyond Identity withdrawing the job offer, Mr. Parves lost an opportunity to advance his career and increase his wages and benefits. As a result of Beyond Identity withdrawing the job offer, Mr. Parves has suffered economic losses in an amount to be determined at trial.

30. As a result of Beyond Identity withdrawing the job offer, Mr. Parves has suffered significant stress, anxiety, frustration, humiliation and depression, and other emotional distress, including physical manifestations of that distress.

## COUNT I
### Associational Discrimination in Violation of the ADA

31. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

32. Defendant is an employer subject to the ADA.

33. In October 2025, Defendant offered Plaintiff employment in the role of IT Manager. Plaintiff was qualified for the role of IT Manager at the time the offer was extended.

34. Defendant learned that Plaintiff's father suffered from Parkinson's disease.

35. After learning that Plaintiff's father suffered from Parkinson's disease, Defendant withdrew the employment offer.

36. The fact that Plaintiff's father suffered from Parkinson's disease was a determining factor in Defendant's decision to withdraw the employment offer.

37. As a result of Defendant withdrawing the employment offer, Plaintiff has suffered damages, including both economic damages (including loss of wages and benefits) and non-economic damages (stress, anxiety, frustration, humiliation, and depression, and other emotional distress. including physical manifestations of that distress).

## COUNT II
### Associational Discrimination in Violation of the NYSHRL

38. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

39. Defendant is an employer subject to the NYSHRL.

40. In October 2025, Defendant offered Plaintiff employment in the role of IT Manager. Plaintiff was qualified for the role of IT Manager at the time the offer was extended.

41. Defendant learned that Plaintiff's father suffered from Parkinson's disease.

42. After learning that Plaintiff's father suffered from Parkinson's disease, Defendant withdrew the employment offer.

43. The fact that Plaintiff's father suffered from Parkinson's disease was a determining factor in Defendant's decision to withdraw the employment offer.

44. As a result of Defendant withdrawing the employment offer, Plaintiff has suffered damages, including both economic damages (including loss of wages and benefits) and non-economic damages (stress, anxiety, frustration, humiliation, and depression, and other emotional distress. including physical manifestations of that distress).

7

## COUNT III
## Violations of the New York State Paid Sick and Safe Leave Law,
## NYLL § 196-B

45.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

46.    Defendant is an employer subject to the New York Labor Law § 196-B.

47.    In October 2025, Defendant offered Plaintiff employment in the role of IT Manager.

48.    Defendant learned that, Plaintiff's intended, when he was employed, to exercise his right to paid leave pursuant to the New York State Paid Sick and Safe Leave law, including to care for his father.

49.    After learning that Plaintiff's intended to exercise his right to paid leave pursuant to the New York State Paid Sick and Safe Leave law, Defendant withdrew the employment offer.

50.    The fact that Plaintiff intended to exercise his right to paid leave pursuant to the New York State Paid Sick and Safe Leave law was a motivating factor in Defendant's decision to withdraw the employment offer.

51.    As a result of Defendant withdrawing the employment offer, Plaintiff has suffered damages, including both economic damages (including loss of wages and benefits) and non-economic damages (stress, anxiety, frustration, humiliation, and depression, and other emotional distress. including physical manifestations of that distress).

8

## COUNT IV
## Associational Discrimination in Violation of the NYCHRL

52.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

53.    Defendant is an employer subject to the NYCHRL.

54.    In October 2025, Defendant offered Plaintiff employment in the role of IT Manager.  Plaintiff was qualified for the role of IT Manager at the time the offer was extended.

55.    Defendant learned that Plaintiff's father suffered from Parkinson's disease.

56.    After learning that Plaintiff's father suffered from Parkinson's disease, Defendant withdrew the employment offer.

57.    The fact that Plaintiff's father suffered from Parkinson's disease was a motivating factor in Defendant's decision to withdraw the employment offer.

58.    As a result of Defendant withdrawing the employment offer, Plaintiff has suffered damages, including both economic damages (including loss of wages and benefits) and non-economic damages (stress, anxiety, frustration, humiliation, and depression, and other emotional distress. including physical manifestations of that distress).

## COUNT V
## Violations of the New York City Earned Safe and Sick Time Act,
## NYC Admin Code § 20-911 et seq

59.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

9

60.     Defendant is an employer subject to the New York City Earned Safe and Sick Time Act.

61.     In October 2025, Defendant offered Plaintiff employment in the role of IT Manager.

62.     After extending the employment offer to Plaintiff, Defendant learned that, Plaintiff's intended, when he was employed, to exercise his right to paid leave pursuant to the New York City Earned Safe and Sick Time Act including to care for his father.

63.     After learning that Plaintiff's intended to exercise his right to paid leave pursuant to the New York City Earned Safe and Sick Time Act, Defendant withdrew the employment offer.

64.     The fact that Plaintiff intended to exercise his right to paid leave pursuant to the New York City Earned Safe and Sick Time Act was a motivating factor in Defendant's decision to withdraw the employment offer.

65.     As a result of Defendant withdrawing the employment offer, Plaintiff has suffered damages, including both economic damages (including loss of wages and benefits) and non-economic damages (stress, anxiety, frustration, humiliation, and depression, and other emotional distress. including physical manifestations of that distress).

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

10

a. An award of compensatory damages for Plaintiff's economic losses, including lost back wages, lost front wages, lost benefits, and damage to Plaintiff's professional reputation;

b. An award of compensatory damages for Plaintiff's non-economic losses, including without limitation the emotional, psychological and physical distress, pain and suffering detailed above, including physical manifestations of that distress;

c. An award of punitive damages;

d. An award of pre-judgment and post-judgment interest;

e. An award of costs and reasonable attorney's fees, as allowed by law; and

f. Such other and further relief as to this Court appears necessary and proper.

## JURY DEMAND

Plaintiff Shahid Parves demands a trial by jury on all issues so triable.

Dated:    New York, New York
          January 22, 2026

Respectfully Submitted,
GRANOVSKY & SUNDARESH PLLC

*/s/ Benjamin Rudolph Delson*
Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street / New York, NY 10005
(646) 524-6001
delson@g-s-law.com / ag@g-s-law.com
*Attorneys for Plaintiff Shahid Parves*

11